Petitioners v. Federal Aviation Administration and Stephen Dixon in his capacity as Administrator of the Federal Aviation Administration. Ms. Bruch for the Petitioners, Ms. Katsilas for the Respondents. Good morning, Council. Ms. Bruch, please proceed when you're ready. Thank you, Your Honor. Good morning, and may it please the Court. My name is Kimberly Bruch, and I represent the Arapahoe County Public Airport Authority, and I'm also arguing on behalf of the other Petitioners in this matter. In 2020, the FAA changed decades of flight patterns in the Denver metro area by moving flight tracks over areas which have never experienced such activity before as part of the overall redesign known as the Denver Metroplex. Prior to the Metroplex redesign, the arrival procedures for aircraft into Centennial Airport originated from the northeast. In particular, the new Bronco arrival procedure, which we outline in our briefs, shifts the air traffic from the northeast to areas further north and then west of the airport. This approach also requires lower altitudes and have been historically utilized by the So overall, the new Bronco route is the northeast arrival procedure, but requires aircraft to fly northwest of the Denver area. The relocation of these flight paths means that portions of the Denver metro area that have never been subject to regular flights now routinely experience them, and this gives rise to the environmental concerns raised, including noise, emissions, and the safety concerns by the Petitioners. Now, contrary to some of the suggestions made, we're not suggesting that the redesign itself created an increase in the number of flights or operations over the metro area. What it did is it changed the concentration of the flights. So that's why there are references to increased flight traffic throughout the briefing in this matter. So when you're looking at examining cumulative impact, it's the change in the concentration of the flights, not an increase in the number of operations that's important. Your principal client runs an airport or is the airport in Arapahoe County, correct? Yes, your honor. What's the evidence that noise will increase in Arapahoe County? Either, I mean, you didn't submit any affidavits on standing. What's the evidence in the record on that? So in the record, each of the Petitioners extensively participated in the public workshop and comment process. So the affidavits weren't necessary because the written submissions by each of the Petitioners that we have cited in the briefs outlined the concerns and were submitted to the FAA directly. They outlined the noise concerns based on the relocation of the flight patterns. The agency found that this would affect something like 70 people in the whole state. And they're in Elbert and Jefferson County, just not Arapahoe County. Yeah, I think that the finding based on those small numbers of people was based on the evaluation based on an increase in the noise level, not the relocation of the flight patterns that changes the noise levels from one area to another. So it's a different analysis. Sorry, you lost me on that. You're claiming, as I understand it, you can't claim a parent's patriae injury. So now you're claiming a proprietary injury as a listener. It's someone who's going to be subject to increased noise, correct? Yes. So just walk me through the distinction you just made again in terms of listeners. I didn't get it. Sure. So when you're changing the entirety of the route, I think the noise analysis that was conducted that identifies those small numbers of individuals that the FAA believes would be affected is based on an analysis of whether there would be an increase in noise over those locations. It's different than looking at the fact that you're now relocating flight routes to where there has never been a noise concern before. So it's taking it from, as the one example that we've kind of relied on the Bronco route, when you're moving the entire flight path from a northeast direction where those residents, if you do a noise analysis, you may find that using the same flight routes, there's no increase in noise based on the redesign. But when you take those flights and you move them to an area that has never had a flight route over top of it, it's not an increase in the noise. It's the fact that you've now picked up and placed that route on top of an area that has experienced no noise before. And so in particular... Sorry, but that's an increase from zero, no? Yeah. Yes. Which is different than the analysis that was conducted to identify those small numbers of people, which was to determine if an existing route would increase based on the level of noise. And so at one point, the FAA actually suggested that the noise complaints are best handled by the local airport in the EA. So they put the onus on Centennial Airport to deal with these new noise issues, but then argue that we don't have the standing or the ability to challenge the redesign, which creates those noise complaints that they're tasking us to handle. So I think there's also a direct link based on the FAA's own instructions related to how to deal with the increased noise situation that's created by the redesign. Can I ask you on historical preservation, and staying on standing for a minute, the your opening brief doesn't mention it at all understanding. I'm sorry, which aspect, Your Honor? Just anything about historical... With Gilpin County and historical preservation, it's just not mentioned. I see. I think Gilpin County, at least initially in their docketing statement, mentioned their standing. And then I do believe in the opening brief, they argued that they had standing because the change in the area of protected interest was originally identified to include them. Then it was revised to exclude them prior to the release of the final EA based on originally, I think, a finding that they weren't going to experience any of the routes that were under the redesign. I think the issue that they raised in the opening brief was that once they moved what they refer to, I believe, as the Zimmer route, that put them directly under one of the new flight paths. But the area of interest was never revised then again to include Gilpin County. And so it was based on that procedural error that they originally relied upon for their standing. And that's in the opening brief? Oh, you mean in the argument section that the argument about Gilpin County should be taken to... I think that's where Gilpin raised their issue with respect to standing, but they did include it in the opening brief. Okay. Just one more question on the geography. I'm just looking at a map. You said the basic import of this was to take a northeast flight path and move it to the north and to the west. But just looking at the map, Centennial Airport is a good bit to the southwest of EIA. It's just hard to imagine that a northwest approach would have any impact whatsoever on that airport. It's not the flights that are going into DIA, Your Honor. These are flights primarily that are on the approach route, the Bronco route, that is one of the primary concerns. And just to be clear, the redesign encompasses a much broader redesign of the flight routes really than some of the concerns that are specific to the petitioner. So we're talking about a subset of the overall. So the Bronco route in particular and the Zimmer route that is referenced by Gilpin County are approach routes into Centennial Airport. So they're not necessarily the flight routes that are utilized by DIA, although those are part of the overall redesign. So the route that goes extremely far to the north is one of the approach routes into Centennial. So they take you way up north of the metro area. Then you have to cut west over to the foothills, which I think it shows on the Bronco map. Then you come south again and have to take a pretty significant left turn at that point to come into the airport. And that's where you drop down to then leave the Bronco route and do your approach into Centennial. Make sure my colleagues don't have additional questions for you at this time, Ms. Brugge. Thank you. We'll hear from the government, Ms. Katselis.  Good morning and may it please the court. My name is Anna Katselis and I'm arguing on behalf of respondents, Federal Aviation Administration and Steven Dixon. If I could, your honors, I would like to first to begin with the standing issue. Of course, this court must assure itself of its jurisdiction in order to review FAA's order. And in this case, the petition should be denied because petitioners have not established their standing to sue. It is not self-evident. They chose not to submit any affidavits and they failed to establish each element of standing by evidence as required in their opening brief. And in particular, petitioners have not established inadequate injury in fact to pursue either their NEPA or their NHPA claims, which are the only claims that are raised in their brief. And in Florida Audubon Society, your honors, this court en banc made very clear that to demonstrate an injury in fact for a NEPA claim, a plaintiff must show that the omission or insufficiency of an EIS may cause the agency to overlook the creation of a demonstrable risk, not previously measurable, or the demonstrable increase of an existing risk of serious environmental impacts that imperil appellant's particularized interest. They have not done this. And if I could take a moment to step back and explain what this project is. The Denver Metroplex project replaced 44 total arrival and departure procedures in the Denver Metroplex area with more technologically advanced newer procedures. Now these procedures are in existing flight paths and there are numerous maps and diagrams in the record that show these are in the areas of existing previously existing flight paths. And, and some of these are into and out of Centennial, as well as DIA. Yes, that's correct, your honor. That's correct, your honor. But, and, you know, and the noise analysis. I would also like to take a moment to explain because it's explained in the record. At J joint appendix 306. The noise analysis was conducted from ground elevation to 10,000 feet above ground level throughout the general study area, which encompassed more than 40% of Colorado's landmass. Now the way that this was performed was that DNLs were calculated on the average annualized day night sound level, which is the metric that FAA consistently uses and that this court has previously upheld were calculated at one half nautical mile intervals throughout this area. And they were also calculated an additional special points, such as where there were specific cultural resources and Judge Katz says, as you mentioned, this only demonstrated that 71 people in 2009 and 121 people in 2014 would experience even a reportable noise increase from what they experience if these procedures were not implemented at all. So, it is not the case that that FAA failed to can fail to evaluate certain, certain changes or, it evaluated it throughout this area and petitioners have not demonstrated any injury in fact to any petitioner again just to demonstrate to pursue either the NEPA or the NHPA plans. In their opening brief, so four of the petitioners are municipalities, and in their opening brief they appeared to rely mostly on a parent's patriae theory. Mountain aviation, they were presenting safety concerns, but they've not raised a safety challenge, which leaves Centennial Airport, the airport authority which has asserted a proprietary interest, and they've mentioned the noise compatibility program, but they haven't established that this project will have any increased risk, serious increased risk of environmental harm, much less that that will that threatens to imperil the airport authorities proprietary interest in any way. So in this case, there really has been a failure to to demonstrate that there is standing for this court to consider the claim. You know, I, the Ms. Bruch mentioned that these petitioners had participated in the process, but certainly that doesn't suffice to establish the requisite injury in fact, and while this is also a procedural claim, it is very clear that the injury in fact requirement is a hard floor that petitioners and plaintiffs must meet in every case. So it simply has not been established in this case. You know, in the reply brief, they mentioned for the first time that the municipalities suffered harm to government owned property, but they haven't specified a single harm to a single specific property. And again, their obligation was to demonstrate this by evidence in the open brief. And this is this made its first appearance in the reply brief. So on this record, it simply is not it definitely is not self evident, respectfully, your honors, and petitioners have not established it. I'll turn briefly to the NEPA analysis. You know, and also to mention, this project was developed over the course of five years. You know, the Federal Aviation Administration began looking at this project in 2014. There was a lengthy study phase and then a design implementation phase, where safety was the paramount concern. During that time, over the course of three years, you know, FAA held 42 public briefings and meetings, and it developed these procedures. And then after that, it had a very lengthy NEPA process. FAA took comment not only on the draft EA, but also on the final EA. And there are 1000s of pages in the record in which FAA accepted and responded to comments. So petitioners had every opportunity to raise their concerns. They disagree, they don't like some of the procedures. But FAA did a very lengthy process here. And it addressed all of the environmental resource categories that it And petitioners have flyspecked this EA, but they have not identified any environmental impact that FAA overlooked, nor have they demonstrated that any element of FAA's analysis was arbitrary or capricious in any respect. Also, with respect to Gilpin County, Your Honor, Judge Nivasan, you are correct, they did not address standing at all in the brief. It's mentioned, you know, only in the merits portion of the brief. And as a correction, the Zimmer flight route does not fly over Gilpin County, it is north of Gilpin County. But the National Historic Preservation Act regulations establish a very clear process for compliance. And in this case, as we've explained in our brief, FAA followed that process to the letter. It reached out to the State Historic Preservation Officer early, very early in the process, it also obtained the Preservation Officer's agreement on delineating the area of potential effects, according to where its noise analysis showed not only a significant but also reportable noise increase, which is in fact, a very small area. Oops, I got a little feedback. I hope nobody else is hearing that. Can I just ask on Gilpin County on the scanning standing part? It does their opening brief does say on page 46, in connection with the merits that Gilpin County is adversely affected and impacted by the Denver Metroplex project and then goes on to make some arguments to that effect. Is that not tantamount to arguing injury? I think Your Honor, it's an it's an argument, but it's not evidence is required. And it's not, you know, the fact that they essentially say that we have historic resources, but that doesn't demonstrate that there's any actual, again, you need some increased risk of harm, some demonstration of some increased risk of harm to those resources. And they have essentially just said that there are resources here. So we submit respectfully, they have not met their burden on that point either. But also on that point, Your Honor, it's also it's very clear that FAA was not required to consult with Gilpin County. Briefly, the historic preservation officer provided FAA with a list of counties and municipalities that had historic preservation ordinances. And FAA consulted with the counties on that list that fell within the area of potential effects. So FAA worked with the that the project would have no adverse effect on any historic property, that the preservation officer concurred in that. And that fulfilled FAA's obligations under the regulations. If there are no further questions, Your Honor, we submit that the petition should be dismissed for lack of standing or in the alternative denied on the merits. Thank you, Ms. Katselas. Ms. Bruch, we'll give you two minutes for your rebuttal. Thank you, Your Honor. I think that part of the issue here is that the petitioners overall, all the municipalities, including Gilpin, had the right to comment on the documents. I think that's undisputed under Section 4332. And so it's reasonable then that those interests should extend to challenging the document on top of all the other standing issues that the various municipalities raised. As I mentioned before, the airport has sort of been tasked with dealing with the increased noise complaints that are going to be the result of the Metroplex redesign, specifically from the FAA. That was their directive that that's how that should be handled. And so they have a direct interest, and as the FAA sort of conceded, a proprietary interest in managing the airport on that basis. If the standing is going to be so constrained, then the agency becomes insulated from judicial review, even where the actions strain the scope of the regulatory authority. Here, not only the noise issues, but the increased fuel burn and the emissions that were raised by the airport, and these were all issues that were raised with the FAA before the EA was finalized. The FAA relies upon these public meetings and things, but the flaw here is that the municipalities and the airport in particular tried to participate in this process, tried to engage the FAA to try to raise these concerns practically and deal with these redesigned flight routes ahead of time so that we could avoid these issues, and they were essentially rebuffed. So even though they went through the motions of these public outreach actions, they really did not engage in the process, and so we do believe we have the standing, Your Honor, to challenge these. Thank you for your time. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan, Wilkins, Katsas